## ARROWSMITH *v.* GORDON et al.

Plaintiff having sold bills of exchange on a foreign country to defendant, delivered to the latter, at the same time, bills of lading for certain property, under an agreement that they were to be held as security for the *acceptance* only of the bills of exchange, and were to be delivered to the consignee on his acceptance. The latter tendered an acceptance of the bills of exchange on delivery of the bills of lading, but the agent of defendant refused to give up the bills of lading before payment of the bills of exchange, and they were protested. Defendant's agent sold the property on its arrival, and applied the

ARROWSMITH
v.
GORDON.

proceeds to the payment of the bills. There was no evidence of any loss sustained by plaintiff in consequence of the time when the sale was made as compared with the price of the article a reasonable time afterwards, nor that plaintiff intended the shipment for any particular purpose which was defeated by defendant's acts; nor any proof of loss, actually sustained from any injury to plaintiff's credit in consequence of the protest of the bills. In an action by plaintiff for damages for protesting his bills, and retaining the bills of lading, and appropriating the proceeds of the cotton: *Held*, that plaintiff is not entitled to recover, as damages, the increased value of the cotton at any time previous to the institution of suit; that defendant cannot claim commissions on the sale of the property, which he had no right to dispose of, and is liable for interest on the balance of its proceeds remaining in his hands beyond the amount of the bills; that the measure of damages in cases of breach of contract is that which will indemnify the party injured; that in cases of breach of contract, even where there is fraud, the damages for which the debtor is liable are those which are the immediate and direct consequence of the breach; and that, where the law does not necessarily infer that the party has sustained damage by the acts complained of, the damage must be alleged and proved so far as the facts are susceptible of proof.

APPEAL from the Fifth District Court of New Orleans, Buchanan, J. The facts of this case are fully stated in the opinion delivered by EUSTIS, C. J. *infrâ*.

*Clarke*, for the plaintiff. If the rights of the parties are to be governed by the common law, the defendants had no right to sell the cotton, until after the maturity of the bills. Story on Bailments, sec. 308. 2 Caines' Cases, 202. If by the laws of Lonisiana, *a fortiori*, none. C. C. 3132. *Garlick* v. *James*, 12 John's Rep. 146. If the jury regarded as the basis of plaintiff's rights, the relative values of the cotton solely, the amount of their verdict was not excessive. "The value of the chattel at the time of the conversion is not, in all cases, the rule of damages in trover; if the thing be of a determinate and fixed value it may be the rule, but when there is an uncertainty or fluctuation attending the value, and the chattel afterwards rises in value, the plaintiff can only be indemnified by giving him the price of it, at the time he calls upon the defendant to restore it." *Cortelyon* v. *Lansing*. 2 Caines' Cases, 215. If the chattel, after the conversion, increased in value, or be attended with other circumstances, the damages may be enhanced accordingly. *Fisher* v. *Prince*, 8 Burr, 1363. A defendant was sued for a breach of contract, in not replacing a certain quantity of stock by a given day, and the court held, as the direction had been given to the jury, that the plaintiff was entitled to recover, not merely the value of the stock as it stood at the day, but the value as it stood at the time of the trial. *Shepard* v. *Johnson*, 2 East. 211. Kent, in the case in 2 Caines, says: "I have no doubt it is just and right that the plaintiff in the present case ought to recover the value of the note at the time he chose to demand it; he has selected that time to call for his note and to liquidate its value, and no other measure of damages short of that, will indemnify him for the loss of the pledge. In trover, if the chattel be not of a fixed and determined value, its worth at the time of conversion is not the rule of damages; but they may be enhanced, according to the increased value of the chattel, subsequent to that time." *West* v. *Wentworth et al.*, 3 Cowen, 82. "In trover, the jury are not limited to find as damages the mere value of the property at the time of the conversion, but they may find as damages the value at any subsequent time, in their discretion." *Greening* v. *Wilkinson*, 1 Carr and Payne, 625. From these authorities it will appear, that the jury were at liberty to find as the measure of damages, the value of the cotton at any period between the time of conversion and trial. But the jury had other elements besides the values of the cotton, with which to calculate. They may have thought there was injury done to the plaintiff's credit, consequent upon the defendants' acts. His bills were protested.

*L. Janin*, for the appellant. If this case should be considered as exhibiting an instance of breach of contract, it is at least not tainted with bad faith; and if the plaintiff should be entitled to damages, the question arises, what is the measure of such damages? And according to what law are these damages to be assessed? According to the law of Louisiana, or the law of England?

This question is answered by the following extract from Story's Conflict of <span style="float:right">ARROWSMITH<br>*v.*<br>GORDON.</span> Law, sec. 321, p. 266: " In stating the foregoing rules, we have been necessarily led to the consideration of many of what are properly deemed the effects of contracts, which, like the validity of contracts, are dependant upon, and are to be governed by, the *lex loci contractus.* These effects are, the right conferred on the party for whose benefit the contract is made; the correspondent duty of the other party, to fulfil it; the right of action which arises from the non-fulfilment of it; and the consequential right to interest or damages, for the injury done by such non-fulfilment, belonging to the injured party. The manner in which remedies are to be administered, will fall under another and distinct head." Thus, the damages due by the drawer of a protested bill of exchange, are determined by the law of the place where the bill was drawn. If, in this case, the defendants had failed to forward the cotton to England, and had sold it in New Orleans, the damages would clearly have been determined by the law of Louisiana. The law of Louisiana on this subject, is contained in arts. 1928 and 1938 of the Civil Code. There being obviously no fraud or bad faith—" no designed breach of faith from some motive, or ill will, or interest" in this case, the plaintiff could only recover such damages as entered into the contemplation of the parties at the time of the contract. It is reasonable to presume that the acceptor of the bills would have sold the cotton to meet the bills, about the time of their maturity; such being the customary course of trade, and that he would have charged the usual commission of two and a half per cent. This is exactly what was done in the present case. The result was the same as if the cotton had gone into the hands of *Hoskins,* and the plaintiff has, therefore, suffered no damages from the alleged state of things. The plaintiff, however, intended to demand the price, which, according to his opinion, the cotton would have brought at the time of the institution of the suit. The petition says that if the cotton had been kept longer, it would have brought £4,481 15s, which after deduction of charges, would have left to plaintiff $6,000; and for this amount he claims judgment.

Is this pretension supported by law? Clearly not by the civil law. If we consult the common law, we shall find much diversity of opinion. Sedgwick on the Measure of Damages, p. 505. But at our distance from the States in which these opposite and irreconcilable opinions are held, it seems most judicious to accept the Supreme Court of the United States as umpire. That court, in a case of positive breach of contract, impelled by interest, held that the measure of damages was the value of the thing at the time of the conversion. *Shepherd* v. *Hampton,* 3 Wheaton, 200. 4 Cond. Rep. 233. It is remarkable, that the counsel for *Shephard et al.* cited in support of their claim for a higher rate of damages, *Cortelyon* v. *Lansing,* 2 Caines' Cases, 215; *Fisher* v. *Prince,* 3 Burr, 1363; *Shepard's Ex'r.* v. *Johnson,* 2 East, 211, which are also relied on by the plaintiff in this case. The same opinion was expressed by Judge Story, in *Watt* v. *Potter,* 2 Mason, 76. And of the same tenor, are the decisions of this court in *George* v. *McNeill,* 7 La. 124. *Porter* v. *Curry,* 7 Ibid, 233.

Yet supposing that the law was, that the value of the cotton at the time of the institution of this suit, was the true measure of damages, it will still appear that the verdict of the jury greatly exceeds this measure. But it is suggested that the jury might have been influenced by considerations of the injury done to the plaintiff's commercial reputation. Such is not the fact—the whole character of the case shows it; even if the manner in which the verdict was calculated was not known to us, and if the jury had allowed any thing on that score, the verdict would have been doubly erroneous. The plaintiff sustained no injury in his standing.

The judgment of the court was pronounced by

EUSTIS, C. J.[*] The plaintiff, in September, 1844, sold to the defendants two bills of exchange, amounting to £2,327 15 6 sterling, and with them were delivered bills of lading for six hundred and ninety-seven bales of cotton shipped on board the Coromando. The plaintiff and defendants were merchants in New Orleans; the bills were sold here, and were drawn on *Henry H. Hoskins* of Liverpool, to whom the cotton was consigned. It is alleged that the bills

---

[*] SLIDELL, J. did not sit in this case, having been of counsel.

of lading were purchased under a special agreement; that they were given and held as security for the *acceptance* only of the bills of exchange, and were to be delivered up to the cousignee on his *acceptance.* The acceptance of the bills was tendered by *Hoskins* on the delivery of the bills of lading. This was refused by the agents of the defendants, the bills of exchange were protested, *Hoskins* having refused acceptance on any other terms, and the defendants' agents took possession of the cotton on its arrival, sold it, and applied the proceeds to the payment of the bills. Another bill of exchange drawn for £500 on the same shipment, and negotiated by the plaintiff was protested, and returned in consequence of the refusal to deliver up the bills of lading. The plaintiff sues the defendants for damages for protesting his bills and retaining the bills of lading, and unjustly and in violation of the contract and agreement aforesaid appropriating the cotton to their own use.

By the retention and disposition made of the cotton in Liverpool, the plaintiff charges that he suffered a direct loss of $6,000, and that by reasons of the failure of the defendants to comply with their agreement aforesaid, and of the dishonoring of the bill aforesaid, his reputation as a merchant was greatly affected, and his commercial transactions, which were important and extensive, were embarrassed, that the dishonor of said bills becoming generally known in New Orleans, New York and Boston, to persons engaged in the bill business, with whom he had theretofore dealt, he could no longer with facility negotiate his bills in the ordinary course of his business as he could before, and that the loss and damage so sustained by him in his commercial reputation and business amounts at least to $10,000, which he sues for. The petition concludes with a prayer for judgment for $16,000, and costs.

The agreement about the bills of lading is expressly put in issue by the defendants' answer; it is charged that it was agreed that the cotton was to be their security until the *bills were paid.* Other matters of defence are specially set forth, but as they come under the general issue it is not material to notice them particularly. This case was submitted to a special jury of merchants, who found a verdict for the plaintiff in the sum of $4,243 91, on which judgment was rendered, and the defendants have appealed.

We are disposed to give great weight to the verdict of a special jury of merchants in a case of this kind ; but, in estimating the damages on so broad a surface of facts as the pleadings in this case present it is not at all surprising that, without any direction from the court as to the rules of law on that subject to which the evidence can be applied, the jury should have fallen into error. We give full faith and credit to this verdict as settling all doubtful questions of fact, and all points of conflicting testimony, and we consider it *as established :* That the agreement was made as stated in the petition : That it was broken by persons for whose conduct the defendants are responsible : That the bills of exchange were protested without any reasonable cause, and that the defendants are liable to plaintiff for damages for those acts. The only question is, as to the amount. And in reviewing the verdict on this point, we do not conceive that we are interfering with any question of fact, but applying the law to the facts as they are in evidence. The jury has no more right to assess damages arbitrarily and without evidence in a case of this kind, than we have to sanction such a verdict.

The cotton was sold by the defendants' agents from the 13th to the 16th December. The advance of price between that time was very gradual until the

10th March following, when there was an advance of a farthing per pound, which the cotton, had it been retained, would have produced. The suit was brought on the 13th March, and it is contended that, by the law of England where the contract was broken, the plaintiff is entitled to recover the increased value of the cotton at any time previous to the institution of the suit by way of damages. We have examined the authorities on which the plaintiff relies, and we do not think they establish that the rule is invariable. The true measure of damages in cases of breach of contract, is that which will indemnify the party injured. In this case no evidence was offered to show that the plaintiff intended this shipment of cotton for any particular purpose, which was defeated by the acts of the defendants, nor that any unusual circumstances attended its origin or destination. It was to be consigned to *Hoskins*, and he was to have the benefit or profits of the consignment. It was intended to be sold in Liverpool, and the proceeds applied to bills drawn upon it. No loss has been shown in consequence of the time at which the sale was made, as compared with prices a reasonable time afterwards, and we think it would not be just that the plaintiff should have the option of fixing on the defendant the price of the cotton in the month of March following. We do not think any fair rule of indemnity applied to the ordinary transactions of the cotton trader would authorise this, nor that any court in England could sanction such a test.

We think, under the finding of the jury, that the defendants had no right to retain the bills of lading, and thus to divert the consignment from its destination. They had consequently no right to sell the cotton, and still less the whole quantity of cotton contained in the bills of lading, for which there appears to be no apology. We are disposed to allow the plaintiff the extent of indemnity which his case warrants and the breach of the contract authorises; but in so doing we are not disposed to award him any thing which a deliberate view of the law will not sanction, notwithstanding the verdict in his favor. We think the defendants have no claim for the commissions on the cotton, which they had no right to dispose of, and that they owe interest on the balance of the proceeds of the cotton remaining in their hands, over and above the amount of the bills. *New Orleans Draining Co. v. De Lizardi*, 2 Annual R. 281. 6 Toullier, 268.

But it is said the jury had before them other elements besides the value of the cotton, on which they had a right to base their verdict—the injury done to the plaintiff's credit resulting from the defendants' acts. We have considered this subject with great care; but under the allegations of the petition and the evidence on this branch of the case, we are satisfied that the jury would not be authorised in assessing damages against the defendants for the injury alleged to have been done to the credit of the plaintiff. In the assessment of damages in cases of contracts, even where there is fraud, the damages for which the debtor is liable are those which are the immediate and direct consequence of the breach of the contract; and, in cases of quasi-contracts, offences and quasi-offences much discretion is left to the judge or the jury; but in these cases that discretion ought to be directed by proper pleadings, and supported by sufficient evidence.

There can be no better rule than that which experience has imposed upon courts in other countries, as a necessary protection against the abuse and error to which an undue latitude in the assessment of damages exposes judges as well as jurors. When the law does not necessarily imply that the plaintiff has sustained damage by the acts complained of, the resulting damage should be al-

ARROWSMITH
*v.*
GORDON.

leged and proved, so far as the facts are susceptible of proof, in order to prevent surprise at the trial, which might otherwise ensue. 1 Chitty on Pleading, 428. 6 Toullier, 289 et seq.

A proper administration of justice requires that the rules established by law for the assessment of damages should be adhered to ; for the article of the Civil Code which gives a discretionary power to judges and juries in certain cases, expressly declares that, *in other cases, they have none*, but are bound to give a full indemnity to the creditor whenever the contract has been broken by the fault, negligence, fraud, or bad faith of the debtor, *according to the rules provided therein.*

Under the charge in the petition of the injury done to the plaintiff's credit by the acts complained of, we consider that there is no sufficient evidence to support the verdict. Under the other charge of loss of profits and damages for the breach of the contract, we have felt ourselves limited to such as were the immediate and direct consequence of the breach. We cannot admit that a discretionary power of awarding damages in actions of trover vested in juries by the law of England, admitting it to be as insisted on by the counsel for the plaintiff, would be the standard by which the responsibility of the defendants ought to be tested in this action.

It is therefore ordered that, there be judgment in favor of the plaintiff against the defendants, for the sum of $1762 45, and interest at the rate of five per cent, from the 28th March, 1845, until paid, and costs in the court below; the costs of this appeal to be paid by the plaintiff and appellee.

~~~~~~~~~~

## SAME CASE—ON A RE-HEARING.

ON a re-hearing allowed to the plaintiff in this case, the opinion of the court was delivered by

ROST, J. We have considered with great care the argument submitted to us on the re-hearing in this case, without being able to change the conclusions first adopted. If, as alleged, the rule of damages for the breach of the contract by the defendants is to be that applicable to actions of trover, so far as the conversion of the cotton is concerned, we take that rule to have been correctly stated in the opinion of the court. We deduced it from the english and american cases within our reach, and we find it stated in nearly the same words by *Mr. Sedgwick*, in his late valuable work on the Measure of Damages: "Unless the plaintiff has been deprived of some particular use of his property, of which the other party was apprised, and which he may be said to have thus directly prevented, the rights of the parties are fixed at the time of the illegal act, be it refusal to deliver, or actual conversion, and the damages should be estimated as at that time." Sedgwick, p. 505. This is in fact the fundamental principle applicable to all breaches of contract that, as a general rule, the market value at the time of the breach is the rule of damages.

Admitting further that, as the arbitrary distinctions of the common law in the form of actions do not obtain with us, and the plaintiff is permitted to state his complaint according to the actual facts, he might claim exemplary damages for a fraudulent or malicious breach of contract as well as for any other willful wrong,

yet the wrongs of which he complains must be proved. The counsel has re- <span style="float:right">Arrowsmith<br>*v.*<br>Gordon.</span> ferred us to decisions of the english courts, by which he maintains that consequences were held to be well inferred from wrongful acts: thus, where the injury consisted in firing guns so near the plaintiff's decoy-pond as to frighten away the wild fowls or prevent them from coming there, or maliciously firing cannon at the natives on the coast of Africa, whereby they were prevented from coming to trade with the plaintiff, these consequences were held to be well inferred from the wrongful act of firing. But in these cases it was proved that, after the firing, the wild fowls did not come to the pond, and the natives did not come to trade; and these facts, after being proved, were held to be well inferred from the wrongful acts. Had the defendants in these cases shown that the wild fowls came to the decoy-pond as usual, and that the trade with the natives had not been interrupted, no damages of any kind would have been allowed. 2 Greenleaf on Evidence, p. 210, and authorities there cited.

The plaintiff alleges that, by reason of the failure of the defendants to comply with their agreement, and by reason of the dishonoring of his bills, his reputation as a merchant has been greatly affected, and his commercial transactions, which were of an important and extensive character, have been greatly embarrassed; that the dishonor of his bills becoming generally known in New Orleans, in New York, and in Boston, to persons engaged in the bill business, with whom he had theretofore dealt, he could no longer as before negotiate his bills with facility in the ordinary course of his commercial dealing. But he has failed to establish the truth of those facts. On the contrary, *Mr. Robb*, an extensive banker of this place, testifies that, generally speaking, the protest of bills under the circumstances of this case would not affect the credit of the drawer; that he never heard of this protest, and has had since extensive dealings with the plaintiff. He cannot say what difficulties the plaintiff may have had with other persons, but he had none with the witness. Other witnesses testify that a protest when satisfactorily explained, does not effect the standing of the drawer, and the loss of credit of the plaintiff is not shown affirmatively.

Although english tribunals may at times infer certain established facts to be the natural consequence of other facts also established, it would be difficult to find authorities to show that they have in any case inferred the existence of the facts themselves. Had the loss of credit been shown, the important question would still have remained, whether it was the natural and proximate consequence of the protest of the bills. According to the testimony of *Mr. Robb*, and other witnesses, it would not have been; and we incline to that opinion. At the time he sold his bills to the defendants, his credit was not the best, or he would not have consented to the transfer of the bills of lading; and many other causes, besides an accidental protest, might have affected his commercial standing, such as it was. In the case of *Vickars* v. *Wilcocks*, 8 East 1, the defendant had asserted that the plaintiff had cut his master's cordage, and the plaintiff alleged that his master, believing the assertion, had thereupon dismissed him from his service. It was held that the discharge was not a ground of action, since it was not the natural consequences of the words spoken. Neither was the loss of credit, alleged in this case, the natural consequence of an accidental protest. How far we might deem ourselves authorised to follow the rules established by the english courts in questions of costs and of damages arising under contracts to be in part executed in England, it is unnecessary to say. Our own law provides that when the inexecution of the contract has proceeded from fraud or bad faith,

ARROWSMITH
v.
GORDON.

the debtor shall not only be liable to such damages as were or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of the contract. But even when there is fraud the damages cannot exceed this, and no discretion is left to the judge or jury. C. C. art. 1928, §2, 3. By bad faith in this rule is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from motives of interest or ill will. C. C. art. 1928, §1. It embraces all fraudulent or malicious breaches of contract, and all willful wrongs to property held by the wrong doer under them. The rule of damages provided in cases of quasi-contracts, offences and quasi-offences, is not applicable to the present controversy. The judgment heretofore rendered must remain undisturbed.