## M. L. Badillo and S. Chauvin v. Francisco Tio.

An executor who withholds property from the legal heirs, after his executorship has expired, is in bad faith. He, consequently, can claim no compensation for the administration of it while the tortious possession lasted.

All who convert the property of others to their own use, are in bad faith; but when the sale itself has been fair, and the full market value obtained, the price, with interest from the date of the sale, is the measure of damages, and the rule is not affected by the subsequent rise or fall in the value of the thing sold.

The executor charged the succession with one hundred dollars, spent in furnishing the slaves of the deceased with mourning dresses    *Held:* It was an act proper in itself, and should not have been opposed.

APPEAL from the Third District Court of New Orleans. *Kennedy,* J.
*P. E. Bonford, H. R. Denis,* and *J. Ad. Rozier,* for plaintiffs. The position assumed by the plaintiffs, is that the defendant owes them the shares of stock, or their value at the time he was ordered by the decree of the court to restore them, together with all the dividends which accrued thereon in the intermediate time. The defendant was a possessor in bad faith; he was retaining possession of property to which he had no legal right, and against the will of the real owner. If he sold or disposed of that property, he did so without the shadow of authority to justify the act. He cannot weaken the position of the plaintiff in such a sale. And certainly he has no right to reap advantage from his illegal acts, as he seeks to do, by crediting the plaintiffs with the proceeds of the sale simply, retaining in his own hands the interest for a period of six years.

The principle contended for by the plaintiffs is amply sustained by the authorities. See *Brown et al.* v. *McGran,* 14 Peters, 479. *Neilson* v. *Morgan,* 5 M. R. 256. *George* v. *McNeill,* 7 L. R. 124, and the recent case of *James S. Foley* v. *Bell* and *Stebbins,* 7th Annual.

The inferior court rejected the credit as it stood, and allowed in its stead the value of the several stocks, with the dividends which had accrued thereon, as established by the testimony of *Messrs. Matthews, Palfrey* and *Wood.*

The several items of credit to the succession, for the rents of the real estate, were opposed, on the grounds that the sums thus credited, were not as large as the property, under proper and judicious management, would have produced.

The opposition proceeded on the basis that the defendant, as a possessor in bad faith, was bound to account, not only for the revenues actually received by him, but for all such as he might have received, or such as the estate was capable of producing.

See the following authorities: Duranton, 4, No. 360. Delvincourt, 2, p. 11, in notes. Touillier, 3, No. 110. Dalloz Annuaire, 11, No. 19.

*Janin* and *Taylor,* for defendant. The district judge declares, that the defendant is accountable to the plaintiffs for the highest price which the bank and insurance stock had, at any time before his decision was given, instead of the price for which it was sold. This decision cannot, we conceive, be sustained on any principle of law or equity. The defendant cannot be regarded as a trespasser, nor was it the intention of the Supreme Court, to authorize the district court to so regard him. The court decided that he was in bad faith. Now, what is the difference between good faith and bad faith? One regarded in law as being in good faith, makes all the fruits he gathers, his own. One in bad faith, is bound to make restitution to the true owner of the fruits. In the present instance, the defendant sold the stock, after he was put in possession as legatee, and long before the plaintiffs brought their action. He considered himself as the owner, and acted, as he conceived, for the best. This species of property is liable to great fluctuation. He acted as many a prudent man has done before, and sold it, because he believed it better to realize its then actual value, than to run the risk which, in the usual course of things, such property is

subject. Let us suppose a case that has not been without example in our day, viz: That the stock, instead of increasing in value, had depreciated, and become worthless, in the same period of time. Would the plaintiffs then have been entitled to recover the price for which it might have been sold for, when the defendant was first put in possession, and before the depreciation took place? If we are permitted to judge from what has been already seen in this cause, it is pretty clear, that the claim would have been made; and then it would have been based upon an allegation, that they had been prevented from selling the stock, in consequence of its being detained from them. If they had had possession of the stock, it is altogether probable, that it would have been sold by them. At any rate, the contrary cannot be known, and it would seem altogether unreasonable and unequitable to suppose the contrary, in a case like the present. It is shown, that the price of the sale accounted for, was the real price of the stock at the time. And as it is not pretended that the sale was made unfairly, and under the influence of any improper motive, we are persuaded, the defendant ought to be made responsible only for the amount received by him. And this would seem to be in concurrence with the decision of this court in this case, with respect to the price of the slaves sold by the defendant. They were sold for much less than the appraisement of them in the inventory, and the amount of the appraisement was claimed. The claim was repeated, and the defendant held to be liable, only for what he actually received. Now, the principle on which that decision was made, is clearly recognized, in the case of *Gaulden* v. *McPhaul*, 4 Ann. 79. See *Kennedy* v. *Whetwell*, 4th Pick. R. 466. *Watt* v. *Potter*, 2d Merlin's R. 76.

By the court:

ROST, J. This case was remanded last year, with directions to the district judge, to cause the defendant to render an account of his administration as executor of *Augustin Macarty*, and for other proceedings, in conformity with the opinion then delivered.

The defendant rendered his account accordingly. Some of the oppositions filed to it by the plaintiffs were overruled, and others were sustained by the district judge. The defendant has appealed, and the answer of the plaintiffs contains a prayer, that the judgment be amended in their favor. We will first notice their application. They ask that the judgment be amended in their favor, by charging, not the rent which the real estate produced, but the highest rent, according to the evidence, which it might have produced. Upon that evidence, the district judge came to the conclusion, that the real estate yielded as much as it was worth while it was rented.

We adopt his conclusion, but we are of opinion, that under the evidence, he erred in allowing rent for the two years during which the Camp street property was unoccupied. It was not in a fit condition to rent after the death of *Macarty*, with advantage to the estate, and could only be rented with very great difficulty, when it was.

The amount paid by *Tio* for attornies' fees, in the suit of *Fox* v. *Tio*, and in the settlement of the succession of *Macarty*, was reduced by the. court, from $2500 to $1500, on the ground that, taking into consideration the small value of the thing in dispute in the suit, and the facility with which the succession had been settled, $1500 was a reasonable compensation under the evidence, and the rule applied to such cases by the former and the present Supreme Court. The evidence is somewhat conflicting, but we are unable to say, that the view taken of it by the district judge is erroneous, or that it is not sufficient to rebut the *prima facie* presumption, that the payments made by the executor, are correct.

The claim of commissions for collecting rents, disbursing, superintending, &c., was properly rejected. After the executorship of the defendant had expired, he was in bad faith, in withholding the property from the legal heirs, and can

claim no commissions for the administration of it, while the tortious possession lasted.

The rule by which we determined the liability incurred by *Tio*, in consequence of the sale of some of the slaves of the succession in 1846, should have been applied to the stocks sold shortly after. All who convert the property of others to their own use, are in bad faith ; but when the sale itself has been fair, and the full market value obtained, the price, with interest from the date of the sale, is the measure of damages, and the rule is not affected by the subsequent rise or fall in value of the thing sold. The circumstances attending the conversion in this case, are not worse against the defendant, than they were in the case of *The Draining Company* v. *Lizardi et als.*, in which, after solemn argument, this rule was recognized and enforced. 2 Ann. 281.

We think that the charge of $100, paid for the mourning dresses given to the slaves of the deceased, should not have been opposed, and that the court erred in reducing it. It was an act, proper in itself, which a son would never disapprove, if done by the executor of his father, and which the plaintiffs, unknown to the deceased as they were, and coming to his succession much against his will, contest with bad grace.

The Supreme Court certainly never adjudged the payment of hire for the services of a dead negro. There is nothing relative to the slave *Jackson* in the decretal part of the opinion, and the opinion itself has been misunderstood. The court, supposing the slaves *Jackson* and *Liza* still in the possession of the defendant, stated that he must account for the hire of those slaves, making proper deductions for time lost. Had this been part of the decree, instead of a mere expression of opinion in the case, as it was then before us, the reservation made was sufficient to cover the contingency of the previous death of those slaves. It being shown in the present record, that *Jackson* had died shortly after *Macarty*, the time lost, embraces the whole period that has since intervened, and no hire should have been allowed for him.

It is therefore ordered, adjudged, and decreed, that the judgment of the court below, ordering the account filed by the defendant to be amended, be reversed as to the following particulars : 1st. As to the sum of one thousand dollars for two years' rent of the property, situated at the corner of Camp and St. Joseph streets, in the city of New Orleans. 2d. As to the sums with which the said defendant is ordered to credit the estate of *Macarty*, as being the estimated value of the stock mentioned in the inventory, and the dividends which accrued thereon since the opening of the succession, and in lieu thereof, the said defendant is ordered to credit the estate with the proceeds of the sales of the said stocks, as made by him on the 25th of July, 1846, together with legal interest thereon from the date of said sales, until paid. 3d. As to the amount charged against said defendant, for hire of the slave *Jackson*. And lastly. As to the reduction made in the charge against the estate, of the sum of one hundred dollars, for mourning dresses for the slaves, which is ordered to stand in the account for the full amount thereof, as charged by the defendant. It is further ordered, adjudged, and decreed, that the judgment of the inferior court be in all other respects affirmed, the costs of this court to be borne by the appellees, and those of the court below by the defendant.