(54 South. 821.)

No. 18,429.

FARALDO v. FERDINAND GUMBEL & CO.

(Dec. 12, 1910. On Rehearing, April 10, 1911.)

*(Syllabus by the Court.)*

1. FACTORS (§ 43*) — UNAUTHORIZED SALE — MEASURE OF DAMAGES.

Where cotton was sold by factors contrary to agreement to hold subject to instructions of a customer, in case of doubt, it will be presumed that the cotton was to be sold during the current season, especially where the customer was largely indebted to his factors. In such a case, the average advance in market price between the date of sale and the end of the season will be taken as the measure of damages, where the factors sold in good faith on the representations of their agent that the customer had consented to sell.

[Ed. Note.—For other cases, see Factors, Dec. Dig. § 43.*]

On Rehearing.

2. DAMAGES (§ 117*)—MEASURE OF DAMAGES —BREACH OF CONTRACT.

The true measure of damages in cases of breach of contract is that which will indemnify the party injured.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 285, 286; Dec. Dig. § 117.*]

3. DAMAGES (§ 18*)—MEASURE OF DAMAGES.

Whether the action be on contract or in tort, the proper measure, except where punitive damages are allowed, is a just indemnity to the party injured for the loss which is the natural, reasonable, and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the person complaining would not have averted. Arrowsmith v. Gordon, 3 La. Ann. 110; Draining Co. v. De Lizardi, 2 La. Ann. 281; Badillo v. Tio, 7 La. Ann. 487; Nimmo v. Allen, 2 La. Ann. 452; Chamberlain v. Worrel, 38 La. Ann. 348; Gallagher v. Jones, 129 U. S. 201, 9 Sup. Ct. 335, 32 L. Ed. 658.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 37; Dec. Dig. § 18.*]

4. FACTORS (§ 43*) — UNAUTHORIZED SALE — RIGHT OF CUSTOMER.

Where a broker or factor makes an unauthorized sale of stocks, cotton, or other movable property, the customer, upon being advised of the sale, if he desires further to prosecute the adventure, may disaffirm the sale and require the broker or factor to replace the property; and, upon the latter's refusal so to do, the customer may replace it himself, and sue for damages he may have suffered. 4 Sutherland on Damages, § 1119; Beers v. Board of Health, 35 La. Ann. 1132, 48 Am. Rep. 256; Tardos v. Railroad, 35 La. Ann. 15; Bader v. Railroad, 52 La. Ann. 1060, 27 South. 584; Monnier v. Godbold, 116 La. 167, 40 South. 604, 5 L. R. A. (N. S.) 463.

[Ed. Note.—For other cases, see Factors, Dec. Dig. § 43.*]

Provosty, J., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by H. B. Faraldo against Ferdinand Gumbel & Co. Judgment for defendant, and plaintiff appeals. Modified and affirmed on rehearing.

Foster, Milling, Brian & Saal, for appellant. Hall, Monroe & Lemann, for appellee.

LAND, J. This case arises from a dispute between a country merchant and his factors in New Orleans. Plaintiff claims that in December, 1904, he entered into an agreement with the defendants, whereby his cotton would be held for at least one year, unless in the meantime plaintiff notified the defendants in writing to sell. The cotton was sold early in February, 1905, and the net proceeds credited to plaintiff's account, leaving a balance of $1,243.94 due the defendants. Plaintiff claims that the cotton was sold without his instructions, and that he protested against the sale. On July 13, 1905, plaintiff wrote to the defendants to sell said cotton. The current market price of cotton had in the meantime advanced several cents per pound.

Plaintiff sues for the gross proceeds of the sale of the cotton less 2½ per cent. commissions for selling.

Defendants deny the alleged agreement to hold the cotton for one year, and aver that same was sold with the consent of the plaintiff given to their agent on or about January 28, 1905.

The preponderance of the evidence supports the contention that the agent of the defendants on December 15, 1904, agreed with plaintiff to hold the cotton for one year in consideration of the execution of a special mortgage for $2,000 as collateral security for the payment of advances made and to be made by the defendants. That some agreement was reached on the subject is shown by the correspondence between the parties. On January 7, 1905, plaintiff wrote to the defendants as follows:

"I was under the impression that the arrangements recently made with you were to assist me in holding my cotton until such time as I want to sell and that time has not yet arrived. I will let you know when I want to sell it."

Defendants replied on January 9, 1905, as follows:

128 LA.—10

"We note that you are under the impression that the last arrangements made were to enable you to hold your cotton. It is true that this arrangement held good at the time, but the market has declined since considerably, and of course, your cotton is of less value, and therefore your account not in shape for us to hold at present prices."

In their answer the defendants aver that on January 28, 1905, their agent obtained the consent of the plaintiff to sell the cotton, and that on being so notified by their agent defendants made the sale. It may be inferred from these averments that on that date the cotton was held subject to the order of the plaintiff.

The alleged consent is not proven by the evidence as it is affirmed by the agent and denied by the plaintiff, and the former is contradicted on other material points by several witnesses.

On being informed of the transaction, the plaintiff protested in forcible language against the sale as made without his authority and against his orders.

In reply the defendants said:

"Now, we surely would not have sold your cotton had we not your instructions, nor would our Mr. Lazarus have written us unless you gave him these instructions to sell your cotton."

[1] This reply is an admission that the cotton was held subject to the instructions of the plaintiff, and this is our conclusion from the evidence taken as a whole.

While the agent may have agreed that the plaintiff might hold the cotton for one year, there is no evidence to show that the defendants authorized or ratified such an unusual agreement. Plaintiff in one of his letters wrote that he expected to hold the cotton until March, and longer if conditions were not favorable.

We are convinced that the plaintiff would have instructed the sale of the cotton on any considerable advance in the market, and, as there is no means of telling when he would have sold, we think that it is fair to allow him the benefit of the average advance be-

tween the date of sale and July 14, 1905, as the defendants acted in good faith on the report of their agent.

The transactions between the parties subsequent to the date of the sale of the cotton have been considered by us, but we do not think they operate as a waiver of plaintiff's claim for damages.

The amount allowed the plaintiff on the basis stated less customary charges will be credited on his account with the defendants as of average date between February 1 and July 14, 1905, and for the purpose of adjusting the accounts between the parties the case will be remanded, reserving to counsel the right to agree on the basis of a decree according to the views herein expressed, and to reopen the case for final adjudication.

It is therefore ordered that the judgment below be reversed, and that this cause be remanded for further proceedings according to law, subject to the reservation above expressed.

### On Rehearing.

SOMMERVILLE, J. The case is stated in the former opinion of the court, wherein the cause was ordered remanded for further proceedings.

We have considered with great care the argument submitted to us on the rehearing in this case without being able to change the conclusions first adopted, except to the extent of recalling the portion of the decree which sets aside the judgment appealed from, and remands the case for further trial.

In the case of Arrowsmith v. Gordon, 3 La. Ann. 110, on rehearing, Mr. Justice Rost, in disposing of the rule to be adopted in measuring damages in a similar case, says:

"If, as alleged, the rule of damages for the breach of the contract by the defendants is to be that applicable to actions of trover, so far as the conversion of the cotton is concerned, we take that rule to have been correctly stated in the opinion of the court. We deduce it from the English and the American cases within our reach, and we find it stated in nearly the same words by Mr. Sedgwick, in his late valuable work on the Measure of Damages: 'Unless the plaintiff has been deprived of some particular use of his property, of which the other party was apprised, and which he may be said to have thus directly prevented, the rights of the parties are fixed at the time of the illegal act, be it refusal to deliver, or actual conversion, and the damages should be estimated as at that time.' Sedgwick, p. 505. This is in fact the fundamental principle applicable to all breaches of contract that as a general rule the market value at the time of the breach is the rule of damages."

In the same case Mr. Chief Justice Eustis says at page 108 of 3 La. Ann.:

"The cotton was sold by the defendant's agent from the 13th to the 16th of December. The advance of price between that time was very gradual until the 10th of March following, when there was an advance of a farthing per pound, which the cotton, had it been retained, would have produced. The suit was brought on the 13th of March, and it is contended that by the law of England where the contract was broken the plaintiff is entitled to recover the increased value of the cotton at any time previous to the institution of the suit by way of damages. We have examined the authorities on which the plaintiff relies, and we do not think they establish that the rule is invariable. [2] The true measure of damages in cases of breach of contract is that which will indemnify the party injured. In this case no evidence was offered to show that the plaintiff intended this shipment of cotton for any particular purpose, which was defeated by the acts of the defendants, nor that any unusual circumstance attended its origin or destination. It was to be consigned to Hoskins, and he was to have the benefit of profits of the consignment. It was intended to be sold in Liverpool, and the proceeds applied to bills drawn upon it. No loss has been shown in consequence of the time at which the sale was made, as compared with prices a reasonable time afterwards, and we think it would not be just that the plaintiff should have the option of fixing on the defendant the price of the cotton in the month of March following. We do not think any fair rule of indemnity applied to the ordinary transactions of the cotton trader would authorize this, or that any court in England could sanction such a test."

The Arrowsmith Case settles the rule for measuring damages in this state, and it has been cited in several cases. See, also, Draining Co. v. De Lizardi, 2 La. Ann. 281; Badillo v. Tio, 7 La. Ann. 487; Nimmo v. Allen, 2 La. Ann. 452; Chamberlain v. Morrel, 38 La. Ann. 348.

[3] Mr. Sutherland in his work on Dam-

ages (3d Ed.) § 1119, after discussing the doctrine and the changes by the courts of various states, says:

"That whether the action be on contract or in tort the proper measure, except where punitive damages are allowed, is a just indemnity to the party injured for the loss which is the natural, reasonable, and proximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the person complaining would not have averted. [4] And the court (of New York) reached the conclusion that a fixed, unqualified rule giving the plaintiff in all cases of conversion the highest market price from the time thereof to the time of trial cannot be applied upon any sound principle of reason or justice. The case was against a broker who had purchased stock for a customer, the plaintiff, not as an investment, but upon speculation; the latter furnishing a small amount as a margin and the former supplying the residue of the capital embarked in the speculation. The broker made an unauthorized sale of the stock; and it was held that, if upon being advised of the sale the customer desired further to prosecute the adventure, he had a right to disaffirm the sale and to require the broker to replace the stock; and upon his failure or refusal to do this that the remedy of the principal was to replace it himself, and that the advance in the market price from the time of the sale up to a reasonable time to replace it after notice of the sale would afford a complete indemnity, and was the proper measure of damages. The case of Markham v. Jaudon, 41 N. Y. 235, so far as it relates to the rule of damages, was overruled. Later decisions have approved and followed Baker v. Drake [53 N. Y. 211, 13 Am. Rep. 507]."

Plaintiff does not here charge wrongful conversion on the part of defendant, yet the authorities quoted show that the same rule applies to the violation of contracts, quasi contracts, and quasi offenses as to conversion. Certainly no greater damages could flow from the violation of contract, where special damages are not shown or punitive damages are not allowed, than flow from a wrongful conversion.

We think the court a qua erred in allowing defendant commissions on the unauthorized sale of the cotton. Arrowsmith v. Gordon, 3 La. Ann. 109. The judgment will have to be corrected to that extent.

The judgment appealed from is amended by reducing the amount or by changing the figures, $1,243.94 allowed on the reconventional demand to $1,061; and, as thus amended, the judgment is affirmed.

LAND, J., concurs.

PROVOSTY, J., dissents in part.