LAND, J.
Plaintiff sued the defendant for damages in the sum of $10,000, for alleged personal injuries sustained by the derailment of the coach in which he was riding as a passenger at the time. The petition alleges that the derailment was caused by a defective track, defective trucks, and equipments of the coach, and high rate of speed of the train; that the train stopped suddenly and with a great jerk, throwing petitioner violently and with great force against a seat and upon the floor of the coach, shaking him up, bruising his body, spraining and otherwise injuring his spine, hack, and hips; that he was confined to his bed for several weeks, and was caused to suffer great physical pain and mental anguish; that he has been regularly treated by physicians, is still disabled, and that his said injuries are permanent.
Defendant, answering, denied the alleged negligence charged in the petition, but admitted that on the date alleged, while one of its passenger trains was running at a very moderate speed near its depot, -one pair of wheels on a coach left the rails and ran along on the ground about 20 or 25 feet.
Defendant specially denied that plaintiff was injured as alleged by the sudden stopping and jerking of the coach, and averred that as a matter of .fact the derailment caused no sudden jerking or violent movement of the car sufficient to shake up, jar, or injure any one.
The case was tried before a jury, which, after considering the mass of evidence adduced, consisting largely of the testimony of surgeons and physicians, found for the plaintiff as follows:
Permanent damages ..............$5,000.00
Physical pain and mental anguish. ... 850.00
Loss of time...................... 750.00
Drugs and medical attention ...........None
$6,600.00
Defendant moved for a new trial, which was overruled by the trial judge for reasons assigned. Our learned brother below found that the evidence for the defendant did not show or explain the cause of the derailment, *762 and quoted from Reems v. New Orleans, 126 La. 511, 52 South. 681, as follows:
“The evidence adduced by the defendant fails to show the cause of the accident, and, in the absence of such explanation, the court is unable to say that the accident resulted from circumstances against which human foresight and care could not guard. Trucks do not leave the rails without some physical cause, such as defects in the trucks, or in the track, or some fault in the operation of the train.”
The judge further said:
“As to whether or not the derailment caused the injury, this court is not prepared to say that the jury made a mistake. The expert testimony introduced has served no useful purpose except to muddy the waters. The plaintiff is seemingly in bad physical condition, and it would take more testimony than that adduced on this trial to cause this court to assert that plaintiff is suffering from ‘railway spine,’ the only cure for which is said to be a ‘verdict of the jury.’
“Perhaps the verdict is somewhat excessive, not excessive of the actual injuries, but excessive as to the specific allegations of injury. However, that is a matter which can be corrected in the upper court, if that court sees fit.”
Defendant has appealed, and its principal contention at the bar is that the evidence shows that the derailment of the coach did not and could not have caused the injuries described in the petition.
It is admitted that the plaintiff was a passenger on the coach which was derailed, and that he complained of injury to the conductor, who gave him the address of the company’s surgeon at Timpson, Tex., the place of plaintiff’s destination.
The testimony of the plaintiff, corroborated by that of his companion, Barber, is to the effect that the former was standing in the aisle of the coach, when it was derailed, and, in consequence of the jar, fell or was thrown against one of the seats, in such a manner as to injure his right side just above the hip. Barber testified that when he first noticed the plaintiff, the latter was “as white as a piece of cotton,” and that he picked him up and laid him down in a'seat, and asked him what was the matter, and plaintiff replied that he was hurt pretty badly. Both testified that the plaintiff vomited several times, and spit up blood.
Plaintiff went on to Timpson, and late in the night or early the next morning arrived at the home of the Barr family. One of the Barrs testified that he helped the plaintiff into the house; that they occupied the same room; that he rubbed plaintiff’s side with liniment; that there was a knot in his side about the size of a hen’s egg; and that plaintiff’s urine contained blood.
Plaintiff returned to Shreveport the same day, and reached his home and went to bed, where he remained for nine days. A brother-in-law of the plaintiff testified that there was a large knot in his side, and that his urine was bloody.
The family physician, who was called in the next day, found no physical signs of injury, and prescribed a liniment. Plaintiff did not tell the physician that he had urinated and spit blood. On the advice of this physician, the plaintiff went to the Shreveport Charity Hospital, where the complaint was diagnosed as “a traumatic injury to the lumbar region.” An X-ray examination proved practically negative. The surgeon found the back tender on pressure, and prescribed a liniment.
The testimony of the first physician discredits the story of the plaintiff and his witness as to the existence in his side of a knot as large, or larger than, a hen’s egg.
The testimony of the surgeon at the Charity Hospital negatives any injury beyond a tenderness of the flesh of the plaintiff’s right side.
The testimony of the medical experts, who examined the plaintiff at a much later date, must have been based largely on plaintiff’s own history of the case and does not exclude intervening or prior causes.
Several experts for the defense testified that plaintiff’s ailments were not occasioned by the bruise but were due to organic troubles. .
*764 Two passengers in the same coach, one of whom was seated hy the plaintiff, felt no appreciable jar, and saw nothing of the accident or of the injury alleged in the petition.
According to the testimony of the conductor, some time after' the train had left Shreveport, plaintiff complained that some one had shoved him against the seat and hurt his back; and thereupon the conductor gave the plaintiff a note to Dr. Whiteside of Timpson, with the assurance that if he was injured the doctor would look after him. The plaintiff declined this free medical service, and did not call in a physician until after his return to Shreveport.
We arise from the consideration of the evidence in this ease with the conviction that the injury to the plaintiff was not serious, and that the award of the sympathetic jury is grossly excessive.
It is therefore ordered that the verdict and judgment below be reduced to §500, and as thus amended be affirmed; costs of appeal to be paid by the appellee.