## KLEIN v. MEDICAL BUILDING REALTY CO., Inc.*
### No. 14294.

Court of Appeal of Louisiana. Orleans. April 10, 1933.

*Rehearing denied May 8, 1933.

R. J. Weinmann, of New Orleans, for appellant.

W. A. Porteous, of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff claims the sum of $35,350 damages, covering permanent injuries, medical expenses, and loss of profits in his business, said to have resulted from plaster falling upon his head on June 13, 1931, about noon, while he was seated in his office, which was rented from defendant. Defendant admits that the plaintiff was a tenant in the building, and that a portion of the plaster fell, but denies that he was injured thereby.

There was a verdict in favor of the plaintiff for the sum of $3,850, and defendant has appealed. Plaintiff has answered the appeal and asked that the award be increased.

Defendant filed a motion in this court to have the case remanded on the ground that several of the jurors made statements in the form of affidavits that they would not have awarded the plaintiff substantial damages if it were not for the fact that the defendant carried liability insurance; the affidavits being annexed to and made a part of the motion. We do not know of any law which gives jurors the right to impeach their verdict, and counsel has not been able to furnish us with any law under which he has a right to proceed as he is endeavoring to do. He does not complain that the case was not fully and completely tried, but concedes that all available evidence was before the jury. If the award of the jury is manifestly excessive, it is the duty of this court to correct such an error, as the law requires us to pass upon questions of both law and fact.

The motion to remand is denied.

The defendant contends that plaintiff's alleged injury falls under the doctrine of "de minimis non curat lex" and, in the alternative, that the amount awarded the plaintiff is palpably exorbitant. The plaintiff counters by saying that, as a result of the accident, he suffers from traumatic neurosis, which is permanent, and that the award of the jury is inadequate.

The record shows that the plaintiff was seated at his desk in his office about noon on June 13, 1931, when a piece of plaster, irregular in shape, about two feet square, fell from the ceiling, which is ten feet high, and struck the desk and floor in the vicinity of where plaintiff was sitting, and, according to his own statement, struck him on the head. He states that he was not rendered unconscious, but was stunned for about fifteen minutes, and thereafter became very nervous. He immediately walked, unattended, to the office of Dr. Alfred Jacoby, located on the same floor as plaintiff's office, a distance of about fifty feet. The doctor examined him, but was unable to find any laceration, contusion, bruise, or swelling on the plaintiff's head, but, as the plaintiff complained that he was nervous, he administered a mild sedative and advised him to go home and lie down. The plaintiff went home in a taxicab and went to bed.

About 2:30 the same afternoon, Mr. Marion J. Legendre, the manager of defendant's office building, called upon the plaintiff, and, while the plaintiff admitted that he did not suffer any physical traumatic injury, he claimed to be very nervous. About 5 o'clock the same afternoon Dr. Jacoby visited the plaintiff, who still complained of nervousness, but he refused to go to the hospital for the purpose of observation. The next morning Dr. Jacoby called upon him again, and this time, upon plaintiff's repeated complaint of nervousness, prevailed upon the plaintiff to go to the Baptist Hospital. After remaining there three days the doctor discharged him as cured; being of the opinion that no secondary effect from the alleged blow on the head had developed or evidenced itself.

The plaintiff was then treated by Dr. Herbert R. Unsworth on June 18 and 19, 1931. Dr. Unsworth diagnosed the case as traumatic hysteria, but, when the doctor insisted upon the plaintiff going to the hospital for the purpose of having a spinal puncture and other tests to determine whether or not there was any physical traumatic injury to the brain as a result of the accident, plaintiff declined to do so, and dismissed the doctor because he felt that he was unsympathetic.

On June 25, 1931, plaintiff placed himself under the care of Dr. Charles S. Holbrook, a specialist on mental and nervous diseases. From that date to the time of the trial, May 5, 1932, he had seen the plaintiff about 200 times, both in his office and at the Touro Infirmary, where he confined and treated the plaintiff for a period of six weeks. He diagnosed the case as psychoneurosis, or hysteroneurosis, the subdivision of neurosis, known as anxiety or hysteria state. This physician states that even if the plaster did not strike plaintiff, the fright caused by the noise was sufficient to produce traumatic neurosis, and, in his opinion, the plaintiff's present condition is a result of the accident; that the symptoms of traumatic neurosis are dizziness, occasional vomiting, trembling, nervousness, loss of appetite, loss of sleep, loss of weight, and bad dreams, all of which

plaintiff claims to be suffering from. The doctor admits that from his examination there was no evidence of organic injury to the nervous system or brain, and that the X-ray picture of the head was negative. As to the permanency of the alleged injury the doctor stated that some of this class of cases recover and others do not, and that "it is difficult to say as to the outlook in any particular case." The treatment administered was hydrotherapy, that is, the patient was wrapped in cold blankets and the temperature gradually reduced until he was placed in ice packs. This was repeated three times a day for the purpose of building up his nerve control. Arsenic was administered to build up his general condition, and he was given sedatives for headaches and mineral oils to regulate elimination. The doctor admitted that he predicated his diagnosis largely upon the history of the case given to him by the patient, and that it was difficult to distinguish between a malingerer and a bona fide sufferer from traumatic neurosis of the anxiety type.

Dr. Gilbert C. Anderson testified that he specialized in neurology and had first examined the plaintiff on November 30, 1931. He found him with an accelerated pulse of 90, normal being about 74, tense, nervous, and terribly frightened, a marked tremor, loss of strength in his arms and hands, apprehensive of impending danger, hearing slightly reduced, and reflexes by tapping muscles unexpected proved to be more active than average. From the history of the case he learned that the plaintiff had been a large man, being 5 feet 10 inches in height, weighing 210 pounds, 44 years of age, and had lost weight until the time of the examination, when he weighed 163½ pounds. The doctor was unable to find any organic trouble, and thought that the plaintiff's condition was purely functional, which he attributed to the accident. He found him sane. He was also of the opinion that it was immaterial as to whether the plaster struck plaintiff or not, because the fright was sufficient to cause traumatic hysteria. On cross-examination he admitted that the patient had told him that he had suffered from migraine headaches prior to the time of the accident, and that there were certain medical tests which could be made to determine the organic causes of migraine, but that he had not made such examination in this instance. Dr. Anderson also stated that the patient, at the time he examined him, admitted taking cocaine for about three months, but had stopped four days prior to the day of his visit to the doctor's office, and that the use of cocaine would aggravate and prolong the plaintiff's condition.

Plaintiff produced four lay witnesses, who testified that prior to the time of the accident he was a large, robust man, weighing over 200 pounds and of a jovial disposition; that after the accident they noticed he was nervous, trembled, and had lost considerable weight; that he complained to them that he had lost his appetite, was unable to sleep, had bad dreams, vomited, had dizzy spells, and sometimes wept.

Plaintiff testified that he was engaged in the export business; that he was 44 years of age at the time of the accident and weighed about 230 pounds, and subsequent thereto lost weight until he weighed 172 pounds. He also reiterated the symptoms testified to by the lay witnesses. He denied that he had told Dr. Anderson that he had used cocaine, and stated that he had never done so in his life. He admitted that he suffered from migraine headaches several years prior to the time of the accident, but states that, at the time of the injury, he was normal. He says that a large piece of plaster about 3 feet by 6 feet fell from the ceiling and struck him on the head while seated at his desk writing a letter; that he was not rendered unconscious, but was stunned for about 15 minutes; that he is always nervous, apprehensive, frightened, and feels like destroying himself; that he trembled so badly that he was unable to perform his work, such as writing letters, et cetera.

The defendant offered as a witness Dr. Alfred Jacoby, the physician who first attended plaintiff. He stated that he was unable to find any evidence of traumatic injury and shock; there being no cuts, bruises, contusions, or any swelling on plaintiff's head; and that in his opinion the plaintiff had completely recovered from the fright when he discharged him, after being in the Baptist Hospital three days.

Dr. Herbert Randolph Unsworth, who specializes in neurology and psychiatry, testified that when he examined the plaintiff there was nothing to indicate that the plaintiff's head had ever been struck by falling plaster, or that he had suffered from any traumatic shock. He stated that after examining plaintiff twice he diagnosed the case as traumatic hysteria, giving the plaintiff the benefit of the doubt, but when he requested plaintiff to go to the hospital and submit to tests in order to definitely determine if he suffered any organic or physical injury, plaintiff refused to do so, and declined to permit the doctor to administer further treatment; that from his original examinations of the plaintiff, the subsequent history of the case, and viewing the plaintiff in the courtroom, he was of the opinion that the plaintiff was a malingerer; in short, that he was feigning, or pretending to suffer from a nervous breakdown on account of the alleged accident. He pointed out that in diagnosing the case the doctor would have to accept the plaintiff's statement that he suffered a loss of appetite, was unable to sleep

and had bad dreams and was nervous, and suffered from dizzy spells. He further pointed out that the plaintiff, by willfully refusing to take an adequate amount of food, could reduce his weight and that he could deliberately cause his hands to tremble.

Dr. Frederick L. Fenno, who specializes in the treatment of nervous diseases, testified as a witness for the defendant without having examined the plaintiff and solely from the hospital reports and by means of hypothetical questions. He declined to pass upon the question of whether the plaintiff was a malingerer, due to the fact that he had not made any physical examination. He states that it is difficult to distinguish between malingering and the true anxiety state of neurosis, but, if one really suffers from traumatic hysteria, the patient is actually ill. It was his opinion that only people with "a fundamental inadequacy" or "an inferiority complex" could suffer from traumatic hysteria, which is produced by fright or anxiety unaccompanied by any physical injury; that the condition is purely psychic, or functional, and that, if the patient is reacting unconsciously, it is a bona fide case, but if the patient is reacting consciously then it is a malingering case; that if the plaster did not strike the plaintiff and the fright alone caused him to become nervous, it was because he was already neurotic, and the present physical manifestations were simply outward evidence of the pre-existing condition of the patient; that any intervening cause, such as a disappointing love affair, financial loss, business worries, back-firing of an automobile, or sudden fright from any cause, could produce the same symptoms that the plaintiff now complains of; that some patients who suffer from traumatic neurosis recover very rapidly and others slowly; that in all cases where damage suits or compensation cases are pending in connection with the alleged condition of neurosis, the patient recovers much more rapidly after the litigation is ended.

The manager of the defendant's office building testified that he is a pharmacist by profession, and, upon being informed that the plaintiff claimed to have been injured by the falling plaster, went to his room and spoke to him; that he appeared to be normal other than complaining that he was nervous, there being no evidence of an injury to his head; that he saw him on a number of occasions thereafter and particularly on June 16, 1931, when he signed a written statement (which was filed in evidence) of how the accident occurred, in which he admitted that he had suffered from migraine headaches for several years, describing it as a nerve condition which runs from the eyes to the area behind the ears; that on several occasions the plaintiff had told the witness that he suffered from migraine; that the plaintiff inquired on a number of occasions whether there was liability insurance to indemnify the owner of the building in the event of loss on account of such an accident; that he saw the plaintiff, unattended, on the street where traffic was heavy on several occasions, and he appeared to be normal and without tremor in his hands that he appeared to have at the time of the trial; that immediately after the accident he examined and measured the ceiling from where the plaster had fallen and that it was an irregular area approximately 2½ feet square, the plaster being about a half inch thick and the ceiling exactly 10 feet high; and that the plaster was on the floor and around the desk where the plaintiff claimed he was seated at the time it fell.

There is no doubt that a portion of the plaster fell from the ceiling of the office occupied by plaintiff, but the preponderance of the evidence would indicate that he was either not struck by it, or, if struck, the blow was so slight that it did not cause any physical injury to him. In such a situation, if we were to be guided by our own judgment and experience, we would not hesitate to hold that the plaintiff would be entitled to recover only nominal damages. Indeed, we were enlightened to learn from the medical testimony that a slight or ordinary fright, unaccompanied by physical injury, could produce traumatic neurosis. But we are compelled to subordinate our own ideas with reference to a medical question to the opinion of those who, by training and experience, are recognized as experts in that field. All of the doctors concede that medical science recognizes traumatic neurosis, i. e., where the patient has suffered physical or organic injury, resulting in a nervous condition, and traumatic hysteria, which results from mere fright, unaccompanied by physical or organic injury and therefore being merely psychic or functional; and that in either case the patient is sick and in need of medical attention. Now it is clear that the plaintiff is not a victim of traumatic neurosis because the evidence is conclusive that he did not suffer any physical or organic injury as a result of the accident. If he is entitled to recover, it must be on the theory that the accident resulted in traumatic hysteria, the noise from the falling plaster so frightening him as to produce that highly nervous condition of anxiety, fright, and apprehension which a patient is unable to put aside by the exercise of will power. Doctors Holbrook and Anderson were of the opinion that the plaintiff suffered from traumatic neurosis, or traumatic hysteria, and was not a malingerer. Dr. Fenno would not venture an opinion on this question, and therefore Dr. Unsworth was the only one who reached the conclusion that the plaintiff was malingering. We believe, therefore, that the preponderance of

the evidence is with the plaintiff, showing that he suffered from traumatic hysteria.

The next question is whether or not this condition was temporary or permanent. Doctors Holbrook and Anderson stated that it would be difficult to say how long the condition might last, but they did not state that it was permanent.

■ Dr. Fenno was of the opinion that the condition would clear up as soon as the plaintiff was relieved of the anxiety of the lawsuit, and Dr. Unsworth stated that the plaintiff could end his nervous troubles at any time he determined to exercise his will power to do so. We are not satisfied that the plaintiff has successfully borne the burden of proof showing that he was permanently injured. In fact the evidence of his experts leaves us quite uncertain as to the duration of the condition of traumatic hysteria.

■ Dr. Anderson, plaintiff's expert, brought out in his testimony that the plaintiff admitted to him, at the time he examined him, that he had used cocaine for three months, and had only stopped using it for four days before he called upon the doctor. It was Dr. Anderson's opinion that the use of such a drug would aggravate plaintiff's illness and prolong the period of plaintiff's recovery. Doctors Unsworth and Fenno concurred in this view. A plaintiff who seeks to recover damages for physical injuries, said to have been sustained through the negligence of a defendant, cannot willfully do anything which would tend to aggravate his condition or prolong the period of his disability and recover additional damages resulting from his own act.

■ Furthermore, Dr. Fenno testified, and he is uncontradicted, that migraine is sometimes associated with epilepsy and insanity, and that attacks of migraine are sometimes replaced by various other functional neuroses. The evidence clearly establishes the fact that plaintiff suffered from migraine prior to the time of the accident, and, while Doctors Holbrook and Anderson felt that his present condition was caused by traumatic hysteria, they admit that they did not make any medical tests to determine definitely what effect migraine would have upon his present condition. We believe it was incumbent upon the plaintiff, since he admits that he suffered from migraine, to show definitely and clearly that migraine had nothing to do with his alleged present condition. It is not sufficient for the plaintiff to make his case probable, but he must prove it with reasonable certainty. Cockrell v. Checker Cab Co., 6 La. App. 743; Faraldo v. Gumbel, 128 La. 287, 54 So. 821; Dwyer v. Woulfe, 40 La. Ann. 46, 3 So. 360; Peoples v. N. O. & N. E. R. R. Co., 127 La. 293, 53 So. 569; Ragas v. Douglas, 139 La. 773, 72 So. 242; Wade v. Houston & S. R. Co., 139 La. 759, 72 So. 220; O'Neill v. Morgan, etc., Co., 5 La. App. 94; Grant v. N. O. Ry. & Light Co., 129 La. 811, 56 So. 897; Caldwell v. City of Shreveport, 150 La. 465, 90 So. 763; Cuneo v. Ariatti, 154 La. 609, 97 So. 878.

■ It is our opinion that the award of the jury is excessive, and we have concluded to reduce it to the sum of $1,000. Liddell v. Lex, 8 La. App. 13; Plescia v. LeRoy, 148 La. 316, 86 So. 824; Ayo v. Holzenthal, 19 La. App. 561, 141 So. 92; Lonatro v. Palace Theatre Co., 11 La. App. 162, 123 So. 184; Teissier v. Stewart, 11 La. App. 164, 121 So. 777; Dugay v. Curran, 11 La. App. 612, 124 So. 595; Solomon v. Faggard, 13 La. App. 432, 443, 127 So. 8; Fontaine v. Dorsey, 15 La. App. 282, 131 So. 506; Yates v. Southwestern Brush Elec. etc., Co., 40 La. Ann. 467, 4 So. 250; Ciaccio v. Cashio et ux., 10 La. App. 65, 139 So. 34; Blanks v. Saenger Theatres, Inc., 19 La. App. 305, 138 So. 883.

The plaintiff also attempted to show that he had suffered certain loss of profits in his business, but it is sufficient to say that he obviously failed to sustain his position in that respect.

For the reasons assigned, the judgment appealed from is amended by reducing the amount awarded plaintiff from the sum of $3,850 to the sum of $1,000, with legal interest from judicial demand, until paid. In all other respects the judgment is affirmed; defendant to pay the costs of both courts.

Amended and affirmed.